843 F.2d 1390
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roselynn M. CASSAUBON, Plaintiff-Appellant,
v.
HEINZ U.S.A., Defendant-Appellee.
 No. 87-3553.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a personal injury and wrongful death claim filed by the family of Norman C. Cassaubon who, at the time of injury and death, was employed by defendant, Heinz USA. The subject of this lawsuit was a fatal accident.
 
 
 2
 The facts may be recited as follows. On the date of the fatal incident at issue, there were ten "cookers" in use at the Fremont plant, all of which were the unique design of Heinz U.S.A. The base of the "cooker" in question contains elements needed to heat and agitate tomato pulp and spices in the production of tomato ketchup. The total cooking unit extends more than one story high and vents into the roof of the plant facility. Due to the agitation required to thoroughly cook the tomato pulp, a rubber sleeve is installed above the cooking area, but well below the roof of the plant. Vibration from the cooking process is absorbed by the sleeve and not communicated to the weather-tight seal at the roof.
 
 
 3
 The "cookers" as described above were cleaned by adding 50 pounds of a caustic material to approximately 450 gallons of water and going through the heating and agitating process. Although the "cookers" were cleaned on a regular or as-needed basis, apparently Heinz had no program for the regular inspection or replacement of the critical rubber sleeve described above.
 
 
 4
 During the cleaning operation performed by the decedent, Cassaubon, on September 1, 1985, one of the sleeves on the "cooker" he was cleaning gave way. This created a "wave" of caustic solution which engulfed him causing severe thermal and caustic burns over 60% of his body. Mr. Cassaubon was rushed to a hospital; but, due to the severity of his injuries, his death followed on October 6, 1985.
 
 
 5
 On the statement of facts just recited, this Court is unable to find an affirmative answer to the fundamental question in the case, namely was there any evidence of intentional tort on the part of the company. The equipment at issue had been in operation for 20 years prior to the accident without any record of injury or any warning that injury was likely. We find no evidence that Heinz took any action which made this injury "substantially certain to occur." See Jones v. VIP, 15 Oh.St.3d 90, 95 (1984).
 
 
 6
 The plaintiff challenges the constitutionality of a statutory amendment which retroactively takes away or impairs an accrued common-law right of action for intentional tort, "even though it attempts to substitute therefore the right to compensation under the Workmen's Compensation Act for an injury which is the basis for such common-law right of action...." Weil v. Taxi-Cabs of Cincinnati, Inc., 139 Ohio St. 198, Syl. p 2 (1942).
 
 
 7
 We decline to decide that question since another basis for decision is dispositive of this case. Our search of this record produces no evidence of intentional tort. Mr. Cassaubon's injury and death resulted from an industrial accident in the plant in which he had worked for many years. His death occurred on September 1, 1985, when he was cleaning a "cook tank" used in the preparation and manufacture of ketchup. There were 10 such tanks which had been in use since the mid-1960's. They had been in use three shifts a day, seven days a week during the harvest season, and during the remaining portion of the year they were used five days a week and cleaning was done on the weekends. Prior to September 1, 1985 there had been no prior injuries sustained during the course of boilover or rupture during the cleaning process at the Fremont, Ohio facility.
 
 
 8
 It appears to this court that decedent's widow is clearly entitled to Worker's Compensation under the applicable statute of Ohio. What she seeks in this appeal, however, is a right to a jury trial for intentional tort.
 
 
 9
 We find that on this record, there is simply no evidence from which a jury could find an intentional tort. The machinery which failed in this instance had been in operation for 20 years without failure or prior injury.
 
 
 10
 What defeats the claim of this unfortunate workman's widow for a broader remedy than the Ohio Worker's Compensation Act affords is the fact that there is simply no evidence which would support a jury finding of intentional injury.